UNITED STATES v. HENSEL, BRUCKMANN & LORBACHER (No. 1864).[1]

"BUTTONS"—"PARTS OF BUTTONS AND BUTTON MOLDS OR BLANKS"—PARAGRAPH 339, TARIFF ACT OF 1913.

A galalith article, shaped like a curling stone, perforated for the reception of a metal shank or wire loop to make it into a shoe button, is not classifiable under the provision for "buttons," but under that for "parts of buttons and button molds or blanks," in paragraph 339, tariff act of 1913.

## United States Court of Customs Appeals, January 29, 1918.

APPEAL from Board of United States General Appraisers, Abstract 41047.

[Reversed.]

*Bert Hanson,* Assistant Attorney General, (*Thomas J. Doherty,* special attorney, of counsel), for the United States.
*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellees.

[Oral argument Dec. 6, 1917, by Mr. Hanson and Mr. Tompkins.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court: The merchandise involved in this case is dutiable under paragraph 339 of the tariff act of 1913. The importation was classified as button molds, and it is claimed to be dutiable as shoe buttons. We quote the paragraph in full:

Buttons of vegetable ivory in sizes thirty-six lines and larger, 35 per centum ad valorem; below thirty-six lines, 45 per centum ad valorem; buttons of shell and pearl in sizes twenty-six lines and larger, 25 per centum ad valorem; below twenty-six lines, 45 per centum ad valorem; agate buttons and shoe buttons, 15 per centum ad valorem; parts of buttons and button molds or blanks, finished or unfinished, and all collar and cuff buttons and studs composed wholly of bone, mother-of-pearl, ivory,

---

[1] T. D. 37520 (34 Treas. Dec., 110).

or agate, all the foregoing and buttons not specially provided for in this section 40 per centum ad valorem.

The contention of the importers was sustained by the board, and the importation was held dutiable as shoe buttons at 15 per cent. The testimony was by a single witness, who produced samples. The witness testified that the samples produced were taken from the importation, and thus identified they were received in evidence.

The samples show articles of galalith about five-sixteenths of an inch in diameter, shaped like curling stones, each having a hole pierced through the short diameter. The witness was asked:

Q. Did you see the articles represented by the Exhibit 1?—A. Yes, sir.

Q. What are they, I mean?—A. Galalith shoe buttons.

Q. Do you use them for any other purpose than shoe-button purposes?—A. Well, they may be used as beads.

Q. But you use them for shoe buttons?—A. Shoe buttons only.

\*       \*       \*       \*       \*       \*       \*

Q. Have you a sample of the *completed* button which you make out of this merchandise, Exhibit 1?—A. Yes, sir.

Q. Is this the sample which you now produce?—A. Yes, sir.

This illustrative sample appears to be a complete shoe button.

The conclusion reached by the board must have been based upon a misapprehension of the testimony, for the same board in G. A. 7799 (T. D. 35843), in the well-reasoned opinion by Waite, General Appraiser, held that the provision for parts of buttons and button molds or blanks, finished or unfinished, covered material which is in no way distinguishable from that involved in the present importation, and in the opinion said:

According to the testimony these goods were imported to be made into shoe buttons, but before they can be used as such it is necessary to attach a metal shank, which is done by putting the same through the perforation and fastening it upon one side. On the other end of the shank is a loop through which the thread or fastening is passed in placing it upon the shoe. It appears from the testimony that it is sometimes used as a "collar loop" and "trimming button."

We do not think the article has been shown to be a completed button. It may very consistently be considered, we think, a part of a button, but whether a shoe button or some other button depends upon its use. We are of the opinion that it is a part of a button, and specifically mentioned under that part of paragraph 339 which provides for "parts of buttons and button molds or blanks, finished or unfinished."

We are not unmindful of the fact that this, in a way, produced an inconsistency in the law in that it levies a higher rate of duty upon part of an article than the article pays when completed. The language of the statute, however, we conclude, is plain. There is no ambiguity, in our judgment; hence it is not necessary to invoke refined rules of construction.

We can add nothing to the reasoning of the board in the case cited. It demonstrates, however, that in the present case the board was in error, and it results that the decision is *reversed*.